| | | |
|---|---|---|
| **STATE OF WISCONSIN** | **CIRCUIT COURT** | **DANE** |

Richard John Kaltenberg et al vs. County of Dane

**Electronic Filing Notice**

Case No. 2022CV000453
Class Code: Property Damage

FILED
03-01-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000453
Honorable Nia Trammell
Branch 6

COUNTY OF DANE
ROOM 106A
210 MARTIN LUTHER KING, JR. BLVD.
MADISON WI 53703

**RECEIVED**

MAR 1 1 2022

DANE COUNTY CLERK

Case number 2022CV000453 was electronically filed with/converted by the Dane County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a $20.00 fee to register as an electronic party. This fee may be waived if you file a Petition for Waiver of Fees and Costs Affidavit of Indigency (CV-410A) and the court finds you are indigent under §814.29, Wisconsin Statutes.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: a5a527**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 608-266-4311.

Dane County Circuit Court
Date: March 1, 2022

Exhibit 1

FILED
03-01-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000453
Honorable Nia Trammell
Branch 6

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **COUNTY OF DANE**

---

**RICHARD JOHN KALTENBERG AND MARY BETH KALTENBERG,**
6188 County Road I
Waunakee, WI  53597,

     and

**ZIEGLER DAIRY FARMS, INC.**
4985 Church Road
Middleton, WI  53562,
          Plaintiffs

vs.

         **SUMMONS**
         Case Code:   30201
                     30402
                     30704

**COUNTY OF DANE,**
210 Martin Luther King, Jr. Blvd.
Room 106A
Madison, WI, 53703,
         Defendant.

---

THE STATE OF WISCONSIN

To each person or entity named above as a Defendant:

YOU ARE HEREBY NOTIFIED that the Plaintiffs named above have filed a lawsuit or other legal action against you.  The Complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this Summons you must respond with a written Answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the Complaint.  The court may reject or disregard an answer that does not follow the requirements of the statutes.  The Answer must be sent or delivered to the court, whose address is Dane County Clerk of Courts, 215 South Hamilton Street, Madison, Wisconsin 53703 and to John A. Kassner, Plaintiff's attorney, whose address is Fuhrman & Dodge, S.C., 2501 Parmenter St., Suite 100A, Middleton, Wisconsin

FILED
03-01-2022
CIRCUIT COURT
DANE COUNTY, WI
2022CV000453
Honorable Nia Trammell
Branch 6

53562.  You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days of receiving this Summons, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint.  A judgment may be enforced as provided by law.  A judgment awarding money may become a lien against any real estate you own now or in the future, and may also be enforced by garnishment or seizure of property.

If you require the assistance of auxiliary aids or services because of a disability, call (608) 266-4311 and ask for the Court ADA Coordinator.


Dated this 1st day of March, 2022.

<div style="margin-left:40%">

Fuhrman and Dodge, S.C.
Attorneys for Plaintiffs;
Richard John Kaltenberg
Mary Beth Kaltenberg
Ziegler Dairy Farms, Inc.


*Electronically Signed by John A. Kassner*
By:  Attorney John A. Kassner
Jkassner@fuhrmandodge.com
State Bar Number 1014336
2501 Parmenter Street, Suite 100A
Middleton, WI 53562

(608) 327-4212  Office
(608) 841-1502  Office Fax

</div>

**STATE OF WISCONSIN**      **CIRCUIT COURT**      **COUNTY OF DANE**

---

**RICHARD JOHN KALTENBERG AND MARY BETH KALTENBERG,**
6188 County Road I
Waunakee, WI  53597,

     and

**ZIEGLER DAIRY FARMS, INC.**
4985 Church Road
Middleton, WI  53562,
          Plaintiffs


vs.                                         **COMPLAINT**
                                  Case Code:    30201
                                                 30402
                                               30704
**COUNTY OF DANE**,
210 Martin Luther King, Jr. Blvd.
Room 106A
Madison, WI  53703

---

        Come now the Plaintiffs, Richard John Kaltenberg and Mary Beth Kaltenberg, and Ziegler

Dairy Farms, Inc. (hereinafter "ZIEGLER") and (hereinafter collectively as "CLAIMAINTS") by

Fuhrman and Dodge, S.C., their attorneys, by John A. Kassner, and as and for a Complaint against

the Defendant, County of Dane (hereinafter "DANE") they allege as follows:

<div align="center"><strong>PARTIES</strong></div>

1.  Plaintiffs, Richard John Kaltenberg and Mary Beth Kaltenberg (hereinafter
    KALTENBERGS"), are husband and wife, residing in Dane County at 6188 County Road
    I, Waunakee, WI  53597, and they are, by occupation, farmers.

2.  Plaintiff, Ziegler Dairy Farms, Inc. (hereinafter ZIEGLER), is a Wisconsin corporation,
    whose registered agent is Gregory L. Ziegler, and whose principal place of business is

<div align="center">1</div>

located at 4985 Church Road, Middleton, WI 53562. It is primarily engaged in the business of dairy farming.

3. Defendant, County of Dane (hereinafter "DANE"), upon information and belief, was and is, at all times relevant to this proceeding, a body corporate of the State of Wisconsin, with its principal place of business and the office of Scott McDonell, its duly elected County Clerk, located at 210 Martin Luther King Jr., Boulevard, in Room 106A, Madison, WI 53703.

## THE KALTENBERG LANDS

4. Paragraphs 1 through 3 are restated and made a part of this Complaint as if fully set forth herein.

5. KALTENBERGS purchased the SE ¼ of the SW ¼ of Section 35, Town 9 North, Range 9 East and other lands in the Town of Vienna from Richard's parents on the 1st day of July, 1996.

6. Richard Kaltenberg's parents had owned and farmed the land since 1943. Richard was born in 1959 and was raised and grew up on these lands.

7. KALTENBERGS sold approximately 8.7 acres located in the southwest quarter of the property containing the residence and numerous farm buildings to their son, but retained ownership of the remaining 32.7 acre balance of that quarter-quarter section. Attached hereto, made a part hereof and marked as **EXHIBIT A** is an aerial photo from the most recent Dane County DCI map (as of February 15, 2022) showing the relevant KALTENBERGS LANDS as well as other lands in the vicinity of the KALTENBERGS LANDS. The 32.7 acres are outlined in blue on **EXHIBIT A**.

8. The KALTENBERGS LANDS are located on the north side of Easy Street which runs east and west along the south boundary of those lands.

9. This litigation involves the southerly 10 acres of said lands which are outlined in orange on **EXHIBIT A.** These 10 acres abut Easy Street, which runs east and west along the southerly boundary thereof.

10. Each year since he was old enough to help on the farm, Richard and his parents productively farmed the 10 acres in question.

11. Starting in 2015, the southerly 10 acres mysteriously became too wet to grow harvestable crops.

## THE ZIEGLER LANDS

12. Paragraphs 1 through 11 are restated and made a part of this Complaint as if fully set forth herein.

13. ZIEGLER purchased the SW ¼ of the SE ¼ of Section 35, Town 9 North, Range 9 East and other lands in the Town of Vienna on November 30, 2010.

14. Subsequent thereto, ZIEGLER sold approximately 2.8 acres of land to a third party but has retained ownership of the balance of the lands in that quarter-quarter section. **EXHIBIT A** also depicts the ZIEGLER LANDS, which abut the east boundary of the KALTENBERG LANDS. The remaining ZIEGLER LANDS are outlined in green on **EXHIBIT A**.

15. This litigation involves 25 acres of the southerly 32.8 acres of the SW ¼ of the SE ¼ of Section 35, Town 9 North, Range 9 East and other lands in the Town of Vienna, exclusive of the 2.8 acre parcel referenced above, and exclusive of 5 acres of wetland that was present

long before Ziegler purchased the property. The relevant 25 acres of the ZIEGLER LAND are outlined in yellow on **EXHIBIT A**.

16. Each year since acquiring that land, ZIEGLER has productively farmed this 25 acres of the ZIEGLER LAND up to and including the year 2014.

17. Starting in 2015, those 25 acres became too wet to grow harvestable crops.

18. Ziegler is informed by the prior owners, and therefore believes that all of the parcel except for the 5 acres of wetland previously referenced has been productive farmland during the previous three generations of family ownership, spanning almost 100 years.

## DANE LANDS

19. Paragraphs 1 through 18 are restated and made a part of this Complaint as if fully set forth herein.

20. On information and belief, DANE owns approximately 80 acres of land in the NE ¼ of the NW ¼ and the NW ¼ of the NE ¼ of Section 2, Town 8 North, Range 9 east of the Town of Westport. Those lands (hereinafter "DANE'S LANDS") are located on the south side of Easy Street and are directly across the road from the aforementioned lands owned by KALTENBERGS and ZIEGLER. DANE'S LANDS are outlined in red on **EXHIBIT A**.

## JURISDICTION

21. Paragraphs 1 through 20 are restated and made a part of this Complaint as if fully set forth herein.

22. In the fall of 2020, KALTENBERGS and ZIEGLER met with Laura Hicklin of Dane County Land Water Resources Department and Jeremy Balousek of Dane County Land & Water Resources Department to notify DANE of their concerns regarding the dramatic rise

of the water table on their lands concurrent with DANE'S construction of its stormwater impoundment basins.

23. Ms. Hicklin and Mr. Balousek refused, at that time, to take any action to remediate the circumstances giving rise to the claims being made herein.

24. Subsequent thereto, KALTENBERGS and ZIEGLER retained a hydrologist to analyze the cause of the rising water table.

25. Thereafter, KALTENBERGS and ZIEGLER served several requests for production of documents on DANE seeking information regarding the construction of the DANE stormwater impoundment basins.

26. On January 20, 2022, KALTENBERGS and ZIEGLER served a Notice of Claim upon DANE, a true and correct copy of which is attached hereto, made a part hereof and is marked as **EXHIBIT B**.

27. On February 10, 2022, Dane mailed out a Notice of Disallowance of Claim, a true and correct copy of which is attached hereto, made a part hereof and is marked as **EXHIBIT C.**

28. This action is being filed less than 60 days since DANE issued its Notice of Disallowance of Claim.

29. Wis. Stat. § 893.80 is not applicable to civil rights claims brought pursuant to 42 U.S.C. § 1983, per *Felder v Casey*, 487 U.S. 131, 153, 108 S.Ct. 2302, 101 L.Ed. 2d 123 (1988).

## FIRST CAUSE OF ACTION
### CONTINUING PRIVATE NUISANCE

30. Paragraphs 1 through 29 are restated and made a part of this Complaint as if fully set forth herein.

31. DANE'S LANDS are naturally higher than the KALTENBERGS LAND and the ZIEGLER LAND. The historic natural drainage of DANE'S LAND flows northwards towards Easy Street, which is higher than the adjacent lands of DANE as well as the lands of KALTENBERGS and ZIEGLER.  Historically, once stormwater had flowed across DANE'S LANDS to the south right of way of Easy Street, it would enter a roadside drainage way along the south side of Easy Street, where it then flowed naturally eastward along the south right of way line of Easy Street to a point of intersection with Wheeler Wilcox Creek located approximately 4,000 feet east of the ZIEGLER LANDS.

32. Starting in 2014, DANE began mining clay from DANE'S LANDS south of Easy Street for use in lining landfills operated by DANE elsewhere in the County.

33. As part of these mining operations, DANE created a series of deep stormwater impoundment basins at the north edge of its property, just south of the south right of way line of Easy Street. **EXHIBIT A** depicts at least three large basins and three smaller basins located in close proximity to the south right of way line of Easy Street constructed by DANE since 2014.  Since the mining operations began, each time it rains, storm water now flows into and is captured by these impoundment basins.

34. Typically, stormwater collected by DANE in these impoundment basins reaches depths up to 10 feet, with a top surface level which is normally higher than the grade of the KALTENBERGS LAND AND THE ZIEGLER LAND.

35. DANE records indicate that in creating these impoundment basins, DANE excavated beyond the bottom of the clay levels and into a more porous sandy layer located below the clay layer and the stormwater impoundment basins.

36. In operating its stormwater impoundment basins, Dane has consistently failed to investigate and maintain its basins so that water collected therein is not able to flow out of those basins into the surrounding sandy layers.

37. This more porous level extends under Easy Street and well into the KALTENBERGS LAND and the ZIEGLER LAND north of Easy Street.

38. Storm water that previously ran naturally to the south right of way line of Easy Street and then eastward to Miller Wilcox Creek is now unnaturally captured, each time it rains, and is channeled into the stormwater impoundment basins created by DANE.

39. Each time it rains, the depth of the water in these deep impoundment basins causes hydrostatic water pressure that forces water through the opening in the clay layer and into the porous sandy layer beneath these impoundment basins, where it is then forced northward, UNDER Easy Street, as a consequence of the great weight of the impounded water column created by the stormwater impoundment basins, where that water then flows in an attempt to seek its own level.

40. Each time it rains, storm water travelling into the sandy layer underneath the impoundment basins, is being forced under Easy Street, and thereafter onto the KALTENBERGS LAND and onto the ZIEGLER LAND, where it is now hydrostatically being forced upwards in the sandy layer to reach a level comparable to that in the impoundment basins, creating unnatural springs on the KALTENBERGS LAND and the ZIEGLE LAND.

41. This constant supply of new water has changed what had been prime agricultural lands into lands that are so wet they are now incapable of growing crops except during periods of drought.

42. Since the commencement of construction of DANE's stormwater impoundment basins in 2014, and as a consequence of the faulty maintenance of those basins, 10 acres of KALTENBERGS LAND is no longer suitable for farming due to the high water table caused by DANE's creation of its stormwater impoundment basins.

43. Since the commencement of construction of DANE's impoundment basins in 2014, and as a consequence of the faulty maintenance of those basins, 25 acres of ZIEGLER LAND is no longer suitable for farming due to the high water table caused by DANE's creation of its stormwater impoundment basins.

44. DANE has created an unauthorized and ongoing private nuisance by concentrating its stormwater into improperly maintained basins which continuously discharge storm water in an unnatural, concentrated manner onto the KALTENBERGS LAND.

45. DANE has created an unauthorized and ongoing private nuisance by concentrating its stormwater into improperly maintained basins which continuously discharging storm water in an unnatural, concentrated manner onto the ZIEGLER LAND.

46. Since learning from KALTENBERGS and ZIEGLER of the water problems its impoundment basins are causing on the KALTENBERGS LAND and the ZIEGLER LAND, DANE has made no effort to maintain its impoundment basins in a way sufficient to abate the private nuisance it has created by allowing water artificially collected therein from escaping through the clay layer below its impoundment basins into the porous sandy levels below the impoundment basins.

47. Nor has DANE made any effort, since learning of the water problems on the KALTENBERGS LAND and the ZIEGLER LAND, to abate the private nuisance it has created by restoring historical drainage patterns by draining and filling its impoundment

8

basins to channel the water that is currently being artificially collected therein back into the historic drainage way along the south right of way of Easy Street.

48. As a consequence of DANE's creation of and failure to abate this ongoing private nuisance, KALTENBERGS have suffered annual crop losses on their 10 acres, commencing in 2015 and continuing up to the present date, totaling $61,935.26.

49. As a consequence of DANE's creation of this ongoing private nuisance, ZIEGLER has suffered annual crop losses on its 25 acres, commencing in 2015 and continuing up to the present date, valued at $140,507.40.

50. Contacts by KALTENBERG and ZIEGLER with Dane County Representatives seeking a resolution of this ongoing private nuisance have been rebuffed by DANE, which has made no effort or shown any willingness to address this problem.

51. KALTENBERGS expect these crop losses to continue uninterrupted into the future unless and until such time as the unnatural discharges of storm water from DANE's LANDS is terminated.

52. ZIEGLER expect these crop losses to continue uninterrupted into the future unless and until such time as the unnatural discharges of storm water from DANE's LANDS is terminated.

53. KALTENBERG and ZIEGLER have no right to enter DANE's LANDS to address the cause of the water being channeled onto their lands.

54. In an effort to mitigate DANE's ongoing and continuing private nuisance, KALTENBERGS and ZIEGLER have recently undertaken to address the consequences of DANE's failure to abate its unwelcome, unauthorized and ongoing and continuous collection and discharge of vast amounts of storm water onto their respective lands.

9

55. To that end, they have jointly hired a contractor to tile their respective fields in order to resolve the ongoing nuisance caused by DANE by capturing the storm water being discharged onto their lands as it comes from beneath Easy Street and channeling that water eastward to Wheeler Wilcox Creek.

56. KALTENBERGS have incurred costs of $45,319.97 to have tiles installed in their field.

57. ZIEGLER has incurred costs of $142,805.44 to have tiles installed in its field.

58. To date, KALTENBERGS AND ZIEGLER have jointly incurred engineering costs of $4,800.00 to analyze the cause and source of the discharge of water onto their respective lands.

59. Pursuant to Wis. Stat. §§ 844.01, 844.16 and 844.21, DANE, for maintaining and failing to abate its ongoing private nuisance, is liable for its ongoing unprivileged intrusion and encroachment onto Plaintiffs' lands and for the subsurface injury caused to the Plaintiffs' respective properties from January 1, 2015, to present as set forth above.

60. Pursuant to Wis. Stat. § 844.01 and 844.20(1), KALTENBERGS and ZIEGLER seek equitable relief redressing the injuries sustained and restraining future injuries that will occur if the discharge of storm water onto their respective lands is not remedied by DANE.

## SECOND CAUSE OF ACTION
## PETITION FOR INVERSE CONDEMNATION PROCEEDINGS
## ARISING OUT OF A TEMPORARY TAKING

61. Paragraphs 1 through 60 are restated and made a part of this Complaint as if fully set forth herein.

62. DANE has been continuously occupying the lands of KALTENBERGS and ZIEGLER by virtue of its unauthorized and ongoing discharge of stormwater from its impoundment basins onto the KALTENBERGS LAND and onto the ZIEGLER LAND, commencing in 2015 and continuing up to the present time.

63. DANE has failed to properly manage its stormwater impoundment basins, which are unnaturally altering the normal flow of stormwater, by allowing it to discharge from these basins and underneath Easy Street and onto the KALTENBERGS LANDS and onto the ZIEGLER LANDS.

64. KALTENBERGS have not given DANE permission to artificially gather stormwater and then alter is natural flow by discharging it onto their lands.

65. ZIEGLER has not given DANE permission to alter the normal flow of its stormwater by discharging it onto their lands.

66. As a consequence of DANE's failure to properly maintain its stormwater impoundment basins, DANE is occupying the KALTENBERGS LANDS and the ZIEGLER LANDS without the right to do so.

67. DANE does not have the right to occupy those lands.

68. KALTENBERGS and ZIEGLER have asked DANE to remedy its discharge of its stormwater onto their respective lands, but DANE has failed and refused to do so.

69. DANE's occupation of the lands of KALTENBERGS and ZIEGLER constitutes an inverse condemnation of those lands by DANE, in violation of Wis. Stat. § 32.10.

70. DANE's occupation of the lands of KALTENBERGS and ZIEGLER constitutes a temporary but terminable taking of those lands by DANE, in violation of Article 1, Section 13 of the Wisconsin Constitution.

71. DANE's occupation of the lands of KALTENBERGS and ZIEGLER constitutes a temporary taking of those lands by DANE, in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution.

72. While KALTENBERGS and ZIEGLER have jointly taken steps to mitigate the damage being caused by DANE's occupation of their respective lands, the unauthorized occupation of their respective lands by DANE constitutes a continuing, but temporary, taking within the meaning of and in violation of Wis. Stat. § 32.10, Article 1, Section 13 of the Wisconsin and the Fifth and Fourteenth Amendments to the United States Constitution.

73. KALTENBERGS and ZIEGLER, seek a judicial determination, pursuant to Wis. Stat. § 32.10 that DANE is and has been temporarily occupying their respective lands without the right to do so, and will continue to do so for such period of time extending into the future until such unauthorized occupation is ended.

74. Upon an affirmative determination by the Court that such an occupation has occurred, KALTENBERGS and ZIEGLER each request a jury trial, pursuant to the provisions of Wis. Stat. § 32.10 to determine just compensation owed to each of them for the temporary taking of their respective properties and interests.

75. KALTENBERGS and ZIEGLER have each incurred and will continue to incur litigation expenses as that term is defined in Wis. Stat. § 32.28(1)(c) for which they each seek an award of their respective litigation expenses as provided by Wis. Stat. § 32.28(3)(c).

76. KALTENBERGS and ZIEGLER have incurred and will continue to incur reasonable attorneys' fees and costs as those terms are defined and awarded to successful litigants pursuant to 42 U.S.C.A. §1988.

77. Upon information and belief, the names and last known post office addresses of parties of interest in this Petition are as follows:

      Richard John Kaltenberg and Mary Beth Kaltenberg
      6188 County Road I
      Waunakee WI, 53597

Ziegler Dairy Farms, Inc.
4985 Church Road
Middleton, WI 53562

Stan and Judy Rauls,
6766 Portage Road
Deforest, WI 53532

Kyle & Jenna Rauls
6568 Hickory Lane
Waunakee, WI 53597

County of Dane
210 Martin Luther King, Jr. Blvd.
Room 106A
Madison, WI 53703

78. That the interest of Stan and Judy Rauls and Kyle and Jenna Rauls arises out of their recent

purchase from KALTENBERGS of the KALTENBERGS LANDS on December 15, 2021.

79. That Stan and Judy Rauls and Kyle and Jenna Rauls have not yet had the opportunity to

plant crops on those lands, and consequently have not suffered any crop losses to date.

80. That Stan and Judy Rauls and Kyle and Jenna Rauls acquired those lands only after the

completion of the tiling of those lands and have not had an opportunity to determine

whether the tiling will resolve the nuisance.

81. That Stan and Judy Rauls and Kyle and Jenna Rauls would presumably have a right to seek

relief from DANE if the tiling of the lands by KALTENBERGS does not resolve the

moisture problem.

**WHEREFORE,** Plaintiffs, Richard John Kaltenberg and Mary Beth Kaltenberg
(hereinafter collectively "KALTENBERGS") and Ziegler Dairy Farms, Inc. (hereinafter
"ZIEGLER"), hereby demand judgment against the Defendant, County of Dane (hereinafter
"DANE"):

13

1. Pursuant to Wis. Stat. §§ 844.01 and 844.20, for redress of past physical injury to their respective properties resulting from a private nuisance created by DANE, resulting in the continuing loss of crops as set forth herein and for the cost to KALTENBERGS and ZIEGLER of installing drain tiles as set forth herein to mitigate future injury to their respective properties, and for an order to abate the ongoing and continuing injury to their property by DANE, and for an order restraining against future injury to said land; and

2. For an individualized determination that Defendant, County of Dane (hereinafter "DANE"), has occupied the lands of KALTENBERGS, and the lands of ZIEGLER without permission and without the right to do so.

3. Plaintiffs further petition the Court to institute individual condemnation proceedings on behalf of each of the Plaintiffs as prescribed by law, and for an individualized determination by a jury of 12 persons of the just compensation owed to each of the Plaintiffs, including separate awards of just compensation for said temporary partial taking, and separate awards for severance damages, together with an award of each of the Plaintiffs' litigation expenses for such inverse condemnation, pursuant to Wis. Stat. § 32.28(3)(c);

(This is the end of Page 14.)

4. For an award of just compensation, pursuant to Article 1, Section 13 of the Wisconsin Constitution and the Fifth and Fourteenth Amendments to the U. S. Constitution, for DANE's taking of the property of KALTENBERGS and ZIEGLER, for a public use without payment of just compensation.


Dated this _____/_____ day of March, 2022.


Fuhrman and Dodge, S.C.
Attorneys for Plaintiffs;
Richard John Kaltenberg
Mary Beth Kaltenberg
Ziegler Dairy Farms, Inc.


By: Attorney John A. Kassner
Jkassner@fuhrmandodge.com
State Bar Number 1014336
2501 Parmenter Street, Suite 100A
Middleton, WI 53562

(608) 327-4212  Office
(608) 841-1502  Office Fax

## **VERIFICATION**

STATE OF WISCONSIN    )
                      ) SS.
COUNTY OF DANE        )

Richard John Kaltenberg, being on oath sworn, deposes and says that he is a Plaintiff in the above-entitled matter, that he has read the foregoing Complaint and Verified Petition for Condemnation Proceedings pursuant to Wis. Stats. 32.10, and he knows the contents stated therein and that the same is true and correct to his own knowledge, except as to those matters alleged on information and belief, and as to such matters he believes them to be true.

Richard John Kaltenberg

Subscribed and sworn to before me
this _____/_____ day of March, 2022.

Name: _John R. Kessner_
Notary Public, State of Wisconsin
My Commission: _is permanent_

16

## **VERIFICATION**

STATE OF WISCONSIN      )
                        ) SS.
COUNTY OF DANE          )

     Mary Beth Kaltenberg, being on oath sworn, deposes and says that she is a Plaintiff in the above-entitled matter, that she has read the foregoing Complaint and Verified Petition for Condemnation Proceedings pursuant to Wis. Stats. 32.10, and she knows the contents stated therein and that the same is true and correct to her own knowledge, except as to those matters alleged on information and belief, and as to such matters she believes them to be true.

<div style="text-align:right">

_____
Mary Beth Kaltenberg

</div>

Subscribed and sworn to before me
this _____1_____ day of March, 2022.

_____
Name: John A. Kessner
Notary Public, State of Wisconsin
My Commission: is permanent

## **VERIFICATION**

STATE OF WISCONSIN    )
                                ) SS.
COUNTY OF DANE         )

Gregory L. Ziegler, President of Ziegler Dairy Farms, Inc., being on oath sworn, deposes and says that he is the president of Ziegler Dairy Farms, Inc., a Plaintiff in the above-entitled matter, and that he is authorized to give this verification on behalf of said corporation, and that he has read the foregoing Complaint and Verified Petition for Condemnation Proceedings pursuant to Wis. Stats. 32.10, and that he knows the contents stated therein and that the same is true and correct to his own knowledge, except as to those matters alleged on information and belief, and as to such matters he believes them to be true.

Gregory L. Ziegler, President
Ziegler Dairy Farms, Inc.

Subscribed and sworn to before me
this _____ day of March, 2022.

Name: _John A. Kessner_
Notary Public, State of Wisconsin
My Commission: _is permanent_

18

## TABLE OF CONTENTS

## EXHIBITS TO COMPLAINT

1. **EXHIBIT A:** Aerial Photo from Dane County DCI Map

2. **EXHIBIT B:** Notice of Claim, January 20, 2022

3. **EXHIBIT C:** Notice of Disallowance of Claim, February 10, 2022



Kaltenberg-Ziegler Complaint Exhibit A 001

Exhibit A

 **FUHRMAN — DODGE** s.c.

**Attorney John A. Kassner**
Phone: 608-327-4212
Email: jkassner@fuhrmandodge.com

January 18, 2022

***VIA Certified Mail with Return Receipt***

Dane County
Scott McDonell, County Clerk
210 Martin Luther King, Jr. Blvd, Room 106A
Madison, WI 53703

Re:    Notice of Claim pursuant to Wis. Stat. § 893.80

Dear County Clerk McDonell:

Claimants, Richard John Kaltenberg and Mary Beth Kaltenberg, hereinafter "KALTENBERG"), and Ziegler Dairy Farms, Inc., (hereinafter "ZIEGLER"), (hereinafter collectively "CLAIMANTS") intend to file a Summons and Complaint with the Dane County Circuit Court asserting that Dane County (hereinafter "DANE") has created and is maintaining a private nuisance affecting CLAIMANTS' properties by artificially collecting storm water into several large ponds it has created in order to mine clay for use in its landfill operations at other locations. That water is then hydrostatically discharged from DANE'S artificial ponds onto CLAIMANTS' Properties, causing substantial crop losses, and rendering significant portions of CLAIMANTS' land unsuitable for farming.

DANE owns approximately 80 acres of land in the NE ¼ of the NW ¼ and the NW ¼ of the NE ¼ of Section 2, Town 8 North, Range 9 East of the Town of Westport. Those lands are located on the south side of Easy Street in the Town of Westport.

KALTENBERG owns the SE ¼ of the SW ¼ of Section 35, Town 9 North, Range 9 East in the Town of Vienna. KALTENBERG'S land is located on the north side of Easy Street, directly across the street from the westerly quarter-quarter section of DANE'S lands referenced above.

ZIEGLER owns the SW ¼ of the SE ¼ of Section 35, Town 9 North, Range 9 East, in the Town of Vienna. ZIEGLER's land is located on the north side of Easy Street, directly across the street from the easterly quarter-quarter section of DANE'S lands referenced above.

DANE'S lands are located at a higher elevation than are the lands of CLAIMANTS. DANE'S records regarding its mining of clay from its lands indicate that, in constructing its ponds, DANE excavated through the bottom of the clay layer into a porous layer of sandy soils. Water collecting in DANE'S ponds is being hydrostatically forced into that sandy layer beneath its ponds, where it then migrates under Easy Street and onto the lands of CLAIMANTS. Since 2014, when the first of the ponds was created, the water table in CLAIMANTS' lands has risen to a point where it has rendered approximately 10 acres of KALTENBERG'S lands too wet to grow crops. Similarly, the

OFFICE: 608-327-4200  |  FAX: 608-841-1502  |  2501 Parmenter Street, Suite 100A, Middleton, WI 53562  |  fuhrmandodge.com

**Exhibit B**

increased water table has rendered approximately 25 acres of ZIEGLER's lands too wet to grow crops.

CLAIMANTS have previously met with DANE officials, Laura Hicklin of Dane County Land Water Resources Department and Jeremy Balousek of Dane County Land & Water Resources Department, to discuss their concern that DANE'S new ponds were damaging CLAIMANTS' lands. CLAIMANTS secured the services of a hydrologist who reviewed DANE'S engineering records relating to the clay mining and the creation of the ponds. He determined from those records that DANE, in creating its ponds, had excavated through to the clay layer into a sandy layer of soils. As the ponds filled with storm water collected from DANE'S lands, the water level in those artificially created ponds rose to a level higher than the grade of CLAIMANT'S LANDS. Hydrostatic pressure created by the ponds forced the waters in those ponds into the sandy layer below the ponds, where it flowed along the sandy layer under Easy Street and into the lower lands of the CLAIMANTS. This caused the water table in the CLAIMANTS' lands to rise substantially. A true and correct copy of that report is attached hereto, made a part hereof and is marked as Exhibit A.

As a consequence of DANE'S artificial collection and concentrated discharge of storm water onto CLAIMANTS' LANDS, which artificially raised the water table north of Easy Street, KALTENBERG has sustained crop losses of $61,935.26 between January 1, 2015, and the present date. Similarly, ZIEGLER has sustained crop losses during the same time period of $140,507.40, less crop insurance proceeds received for losses in 2015 and 2016, resulting in a net loss of $126,053.40. The collection and discharge of storm water constitutes an ongoing and continuing private nuisance, that will continue to cause damage to CLAIMANTS and their lands until remedied by DANE. CLAIMANTS intend to seek additional damages as they are incurred until the nuisance has been abated by DANE.

CLAIMANTS have contracted to have their fields tiled, and drained eastward to a nearby stream in an effort to restore the water table on their lands. That work is currently proceeding. The bid cost of this tiling is $188,125.41. KALTENBERG'S share of this estimated cost is $45,319.97. ZIEGLER'S share of this estimated cost is $142,805.44.

CLAIMANTS insist that DANE'S actions to collect, and artificially discharge an increased and artificially concentrated volume of water to their respective parcels of land has created, is currently maintaining, and will continue to constitute and maintain a private nuisance to the detriment of the respective parcels of KALTENBERG and ZIEGLER. CLAIMANTS intend to file suit seeking a permanent injunction compelling DANE to restore the water table on their respective parcels to pre-pond development levels by reimbursing the costs CLAIMANTS are incurring to install tiling on the affected fields. CLAIMANTS also intend to include a claim for all crop damages sustained by KALTENBERG and ZIEGLER commencing with the construction of the first pond in 2014 and up to the date upon which the tiling of their fields is completed and put into service.

In addition, as a further proximate result of the nuisance created by DANE, CLAIMANTS have incurred expenses to date for records review, testing and for preliminary preparation of a remediation plan in the sum of $4,800.00 which they also intend to recover as a part of that lawsuit. CLAIMANTS intend to seek reimbursement of additional engineering costs incurred in addressing

2

and resolving the damage to CLAIMANTS' lands as they are incurred subsequent to the date of this Notice of Claim.

KALTENBERG and ZIEGLER hereby give notice of their intention to bring suit to recover their respective crop losses and their respective portion of the cost of tiling their fields to resolve the ongoing damages.

Dated this _18_ day of _January_, 2022.

AGENT'S SIGNATURE
FUHRMAN & DODGE, S.C.

Attorney John A. Kassner

cc:      by Certified Mail and by email to Laura Hicklin at: hicklin.laura@countyofdane.com
         by Certified Mail and by email to Jeremy Balousek at: balousek@countyofdane.com


Name and Address of Claimant, KALTENBERG:

Richard John Kaltenberg and Mary Beth Kaltenberg
6188 County Road I
Waunakee, WI  53597

Name and Address of Claimant, ZIEGLER:

Ziegler Dairy Farms, Inc.
4985 Church Road
Middleton, WI  53562

3





**Draft Memorandum**

**Attorney Work Product**
**Privileged and Confidential**

| | |
|---|---|
| Project: | Kaltenberg Easy Street |
| Project No: | 2103 |
| Subject: | County Data Review and Site Assessment |
| Prepared for: | John Kassner |
| | Richard Kaltenberg |
| Prepared by: | Michael Schwar, PE |
| Date: | August 30, 2021 |
| Attachment: | 210412 Kaltenberg Site Visit.pdf |

The owners of two properties along the north side of Easy Street in Waunakee WI have observed increased occurrence of saturated field conditions in recent years and suspect that these conditions may be related to the construction of two settling ponds immediately across Easy Street on a site owned by Dane County. The property owners have enlisted Stony Point Hydrology LLC (SPH) to evaluate the available information in order to determine the likelihood that pond construction could have raised the water tables on their sites. To this end, SPH and the clients' attorney have requested and reviewed data from the County data and conducted two site visits. This memorandum summarizes the information collected to this point with regard to the potential impacts of pond construction on the fields immediately to the north, presents professional opinions regarding the likely current impacts and identifies potential approaches to reduce water table impacts due to the existing ponds.

RESTORING FRESHWATER ECOSYSTEMS   ◆   ADVANCING SUSTAINABLE WATER RESOURCES



Figure 1. Kaltenberg Site Location

**County Data Review**

With a letter dated March 3, 2021, John Kassner formally requested that Dane County Department of Land and Water Resources and Dane County Department of Waste & Renewables provide information identified by SPH as potentially relevant to identifying potential impacts of pond construction on the conditions in the fields on the north side of Easy Street. The request included:

1. *All Topographic maps for the county lands excavated by the County reflecting conditions immediately prior to the commencement of the excavation and mining and all such maps prepared since that time reflecting changes in the topography since mining and excavation commenced;*
2. *All soil boring locations and logs prepared prior to and in anticipation of the mining and excavations and at all times subsequent to those initial borings;*
3. *Any and all observations and /or test results pertaining to the physical properties of the soils/geology on and under the site, including stratigraphy;*
4. *All stormwater drainage analyses and reports prepared by Dane County;*

Attorney Work Product – Privileged and Confidential

5. *Construction plan sheets showing topography, grading and layout of the mining operations, including those for each stage or phase of the operations;*
6. *Quantities and types of materials removed from the site by year;*
7. *Any and all observations and/or test results pertaining to the physical properties of the soils removed from the site or remaining in-situ;*
8. *Any and all groundwater level measurements, locations and analyses (not including chemical analyses);*
9. *Design and construction documents and analyses for the constructed ponds, including pre- and post-construction surveys;*
10. *Water level observations and inspection reports for the constructed ponds;*
11. *Copies of any and all planning documents prepared by or for Dane County to reflect options for future use of the Dane County lands described above.*

The County provided two packages of data in response to Mr. Kassner's request, one on April 27, 2021 and one on May 7, 2021. SPH reviewed the response and suggested that Mr. Kassner ask the County to confirm that they had provided all of the information available for Items 6, 7, 8, 10 and 11, and to again request electronic data in support of Item 1. After Mr. Kassner forwarded this follow-up to the County, an additional package of data was provided on July 2.

In all, the County provided:

1. Topography - Several versions in .pdf format. Did not provide electronically (.dwg or ESRI) despite the fact that these electronic files were needed to produce the documents they did provide.
2. Soil borings and test pits - Provided test pit reports and logs. Provided borings taken for restoration design.
3. Soil observations and test results - Soil particle size distribution and nutrient content test results provided.
4. Stormwater drainage reports - Analyses provided within erosion control report.
5. Construction plan sheets - Plan set showing two phases provided. Reclamation reports, photos and construction reports showing extent of land affected and reclaimed by year.
6. Quantities and types of materials removed from the site by year – Quantities of clay removed provided by cell.
7. Soil test results for removed or remaining materials - None provided.
8. Groundwater level measurements - None provided.
9. Pond construction documents and analyses – Plan view and cross-section/detail in plan set. Survey of pipe, berm and spillway elevations, no bathymetry.
10. Water level observations - One set of water levels with field survey, presumed to be April 16, 2021.

Attorney Work Product – Privileged and Confidential

11. Plans for future use - Site restoration plan provided.

In preparation for excavating the clay from the site the County took 57 soil borings on their site, spaced on a 200 ft by 200 ft grid. Generally across the site, and specifically at borings in the vicinity of the ponds, the borings indicated a brown silty clay layer immediately below the silt loam topsoil, extending for a thickness of 2-6 feet. This silty clay is the material that was eventually removed and used for the clay liner. Beneath this layer, the borings indicate a sandier layer, called out as sandy silt or sandy loam in some places and as sand or sandy seams in other places. Under the eastern pond, the elevation of the top of this layer was indicated in the boring logs as 912 ft (Borings E11-E13 S3, Figure 2, all elevations are in NAVD 88) and immediately south of the pond the top is at 920 ft (Borings E11-E13 S5). Under the western pond it was at 909 – 914 ft (Borings E3-E9 S1). In many situations soils with increased sand content have higher permeability and transmit groundwater more readily than soils dominated by silts and clays.



Figure 2. Kaltenberg soil sample location.

Attorney Work Product – Privileged and Confidential

Soil pits were also evaluated for the design of site restoration, and these pits also indicated the presence of a high permeability layer, noting "stony sand" between 6 and 30 inches below the ground surface.  However, it is not clear where these pits were located so it cannot be determined the degree to which this information is relevant to the current evaluation.

The survey information, boring logs and construction plans provided by the County, as well as the 2017 LiDAR data, were used to generate cross sections of the site including the eastern pond for both the pre-construction and post-construction conditions (Figure 3, red line in Figure 2).  Aerial photographs suggest that the pond was constructed in approximately 2016.  The profiles indicate that the pond excavation extends well into the sandier layer identified in the boring logs, likely creating a direct interface between the water in the pond and the potentially higher permeability layer beneath the clay.



Figure 3.  Cross Section of Eastern County Pond and Vicinity, South to North

It should be noted that the design documents provided do not indicate the depth of excavation of the western pond (constructed in approximately 2019) but if the design is similar to the eastern pond its bottom elevation would be at approximately 911 ft.  Since Borings E3 S1 and E5 S2 indicate the presence of sand and sandy silt loam at or above

Attorney Work Product – Privileged and Confidential

elevation 911.5 ft, it is reasonable to assume that the pond may intersect the higher permeability layer as well.

**Site Visits**

Michael Schwar conducted an initial site visit on April 12, 2021 to document visible conditions at the site and around the ponds. Documentation of that visit is provided in the attached memorandum. During that visit, the water surface in the western County pond was observed to be at approximately 918 ft. There was standing water in several areas of the cultivated fields north of Easy Street and in the ditch along the south side Easy Street adjacent to the ponds.

A follow-up field visit was undertaken on July 9, 2021 to evaluate the shallow soil layers beneath the field and obtain a measurement of the water table. At this time the field was supporting a robust corn crop. A backhoe was used to dig a 48-inch deep soil pit approximately 100 feet north of the centerline of Easy Street along the eastern edge of the Kaltenberg property (K1, Figure 2). Based on Dane County 2017 LiDAR data, the ground surface at this location is approximately 915.8 ft. Soil conditions were examined and documented (Figure 4), and confirmation samples taken at 2, 3 and 4 feet in depth were placed into plastic bags and sealed. Immediately water began to quickly flow into the hole and on July 10 the water level in the pit was observed to be 12 inches above the bottom, or approximately elevation 912.8 ft. Concurrently, the water level in the eastern pond was observed to be very low, approximately three to four ft below the outlet pipe, which corresponds to a water surface elevation of 912-913 ft.

The soil at the site location had a similar layering pattern to that observed in the boring data provide by the County, with a 30-inch thick layer of silt loam topsoil overlaying a layer of silty clay. This silty clay layer was approximately 18 inches thick, and at the bottom of the layer appeared to transition to a sandier composition. The wetness of the soil layer beneath the silty clay, along with a color change to light brown, and the presence of fine sand within the soil strongly suggest that the sandier layer observed in the County borings was also present beneath the field starting at an elevation of approximately 912 feet.

Attorney Work Product – Privileged and Confidential



Figure 4.  Observed soil profile on Kaltenberg site.

**Opinion Regarding Site Condition**

The cross section for the eastern pond strongly suggests that the pond was excavated into a sandy layer underlying the clay layer on site, and the available data indicate that the western pond likely also intersects that layer.  By constructing the ponds and allowing water to pond several feet higher than the pre-construction water table (observed at approximately 912 ft), the project raised local water tables in the vicinity of the ponds, and the intersection of the pond bottoms with the potentially higher permeability layer provides a means for water table raises to occur wherever that layer extends.  Site observations indicate that the potentially higher permeability layer likely extends under Easy Street and under the fields to the north, confirming that the ponds could be driving water table increases there.

Attorney Work Product – Privileged and Confidential

Additionally, the water level in the eastern pond was observed to fall much faster than can be explained by evapotranspiration or by outflows. On April 16 of this year the County measured the water level in that pond at 915.5 ft, and on July 9 it was observed at 912-913 ft. There are no surface outflows from the pond once the water falls below 915 ft, and although the period was relatively dry there were approximately 7 inches of rainfall total. The expected evaporation would be on the order of 12 inches. Given this, the water level decrease is at least two feet greater than would be anticipated without seepage, so there is a strong indication that seepage is occurring out of the bottom of this pond.

The data and site observations strongly suggest that one or both of these ponds are creating conditions that are driving higher local groundwater levels and seepage, and that there is a clear pathway for increased water tables in the fields directly north. When the ponds are full (916.8 ft and 915.5 ft), their water levels are well above the level of the topsoil to the north (913.3 ft). With a permeable soil layer connecting them, it would be expected that over time the water table in the topsoil layer would rise unless the existing clay layer was extensive and continuous enough to isolate the topsoil from the influence of the permeable layer. Additional groundwater level monitoring and soil characterization could be conducted to more fully quantify this impact.

**Solutions to Eliminate Potential Impacts**

There are at least three approaches that could reduce the negative impacts of pond seepage on the properties north of Easy Street:

- Eliminate ponds. Filling the ponds or creating openings at the pond outlets so water entering the ponds can freely drain should reduce the seepage under the roadway to pre-pond conditions in a very short time.
- Line the bottom of the ponds with clay. As silt and clays from the watershed drop out in the ponds there is likely to be a sealing process over time, but it is not known how long it would take before seepage out is significantly curtailed. Constructing a clay liner is possible but obtaining a complete seal may be challenging as preferential flow paths can develop during construction or afterwards.

Attorney Work Product – Privileged and Confidential

- <u>Install drainage beneath the fields north of Easy Street.</u>  Properly designed drainage systems could intercept the water seeping from the ponds and maintain adequate water table depths beneath the root zone.

**Recommended Next Steps**

1. <u>Additional data request</u>.  Meeting minutes and field notes show that Craig McCallum from Dane County Land and Water identified that a stony sand layer was present within the shallow soil borings collected in 2015 for the site restoration plan.  This layer occurred at 8-10 inches below ground surface in several locations.  However, the notes provide us to not indicate the locations for those borings.  Based on this, we would need additional information specifically including a map of boring locations or a statement from Mr. McCallum to assess the relevance of his findings.  Also, since the bottom elevation of the western pond was not indicated on the construction plans provided, this information should be requested from the County or obtained by survey.

2. <u>Consider presenting this memorandum to the County</u>.  This evidence of potential impacts may make them reconsider their assertion that the ponds have no impact on the fields to the north.

3. <u>Use aerial photographs to verify recent onset of high water tables and to quantify crop losses over time</u>.  U.S. Department of Agriculture collects aerial photographs of fields on a regular basis; historical and recent photographs can be evaluated for evidence that conditions have changed since construction of the ponds.

4. <u>Collect geotechnical borings in field</u>.  Consider whether it would be worth the expense to gather additional soil borings and/or install wells on the site.
    - Extending the one soil profile obtained will provide more information regarding the extent and nature of the higher conductivity layer beneath the site.  Also, obtaining a boring to the west will provide information about the horizontal extent and any slope to the subsurface layers.
    - Taking samples of the high permeability layer will allow testing that can provide evidence regarding the groundwater-carrying potential of that layer.

Attorney Work Product – Privileged and Confidential

Kaltenberg-Ziegler Complaint Exhibit B 012

- Monitor water levels.  More observations of water tables will strengthen any inferences we can draw.

5. <u>Obtain additional borings on County property</u>.  If we were able to access the site and conduct investigations, it may be possible to develop additional data in support of this analysis.

   - Borings along the edge of the Eastern Pond could confirm that the pond intersects the higher permeability layer and allow testing the soil in that layer.
   - Likewise for the Western Pond.
   - Water table wells and/or piezometers would be very useful in evaluating the subsurface flow generated from the ponds.

Attorney Work Product – Privileged and Confidential



GREG BROCKMEYER
Director of Administration

**COUNTY OF DANE**
DEPARTMENT OF ADMINISTRATION

**RISK MANAGEMENT**

Room 425 City-County Building
210 Martin Luther King Jr. Blvd.
Madison, WI 53703-3342
608/266-4134
FAX 608/283-2973    TTY 608/266-4941

DAN LOWNDES
Risk Manager

<u>NOTICE OF DISALLOWANCE OF CLAIM</u>
**Sent U.S Mail, Certified, Return Receipt Requested**

February 10th, 2022

John Kassner, Fuhrman & Dodge
2501 Parmenter St. Suite 100A
Middleton, WI. 53562

RE: Ziegler Dairy Farm, Inc.

Certified mail receipt number: 7019 2970 0001 4447 6939

PLEASE TAKE NOTICE that, pursuant to s. 893.80(1g) of the Wisconsin Statutes, you are hereby notified that your claim against Dane County has been disallowed by the Dane County Board of Supervisors on February 3, 2022.

TAKE FURTHER NOTICE that no action on your claim against the County of Dane or any of its officers, agents, officials or employees may be brought after six months from the date of service of this notice.

Sincerely,

Dan Lowndes
Risk Manager

Kaltenberg-Ziegler Complaint Exhibit C 001

Exhibit C

PROCESS SERVER

3/11/22          11 18 AM

DATE    /    TIME